IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01437-CMA-NRN

LANDON MONDRAGON,

Plaintiff,

v.

NOSRAK LLC and
KASEY KING

Defendants.

---

## ORDER DENYING
## DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE (DKT. #42)
## BUT ORDERING ALTERNATIVE SANCTION

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before the Court on Defendant's Motion to Dismiss for Failure to Prosecute, filed April 24, 2020. Dkt. #42. Judge Christine M. Arguello referred the Motion to me on April 27, 2020. Dkt. #43. The Motion to Dismiss will be denied, but as an alternative sanction for Plaintiff's counsel's demonstrated inability to comply with even basic court orders and court requests, the Court will require Plaintiff's counsel, Mr. Richard P. Liebowitz, to associate with a qualified Colorado federal court practitioner in order to proceed with the prosecution of this case. Plaintiff's counsel is also ordered to file a copy of this Order, with a cover sheet titled "NOTICE OF ATTORNEY SANCTION," in any case he currently has pending in this Court and in any future cases that he may file in this Court for the next six months.

Based on the extensive description below of Mr. Liebowitz's misconduct in this District and other courts around the United States, I believe that Mr. Liebowitz's continued practice of law represents a clear and present danger to the fair and efficient administration of justice, and steps should be taken promptly by appropriate disciplinary authorities to suspend his ability to file new cases unless and until he has demonstrated he has appropriate systems in place to assure regular compliance with court rules and rules of professional conduct.

## 1. BACKGROUND

The asserted basis for the Motion to Dismiss for Failure to Prosecute was the failure by Plaintiff's counsel, Mr. Richard Liebowitz, to submit by March 5, 2020 a revised Scheduling Order reflecting the dates and discovery limitations decided at the February 26, 2020 Scheduling Conference, and a similar failure by Mr. Liebowitz to provide initial Rule 26(a) disclosures by March 17, 2020. *See* Dkt. #35 (Courtroom Minutes of Scheduling Conference specifying, among other things, the date for submission of a revised Scheduling Order and for Initial Rule 26(a) disclosures). Mr. Liebowitz attended the February 26, 2020 Scheduling Conference and there is no dispute that he heard and understood the directions of the Court issued at that conference.

On April 27, 2020, spurred by Defendants' Motion to Dismiss for Failure to Prosecute, this Court issued a Minute Order ordering that on or before April 30, 2020, Plaintiff was (1) to electronically serve his Rule 26 Initial Disclosures on Defendants, and (2) submit to the Court the revised Scheduling Order. *See* Dkt. #45. The Minute Order also directed that if Plaintiff wished to otherwise respond to the Motion to Dismiss

for Failure to Prosecute, he was to do so on or before May 1, 2020. *Id.* Plaintiff, through

Mr. Liebowitz, did file a response opposing the Motion to Dismiss. *See* Dkt. #47.

The initial disclosure deadline of March 17, 2020 had been decided at the

Scheduling Conference and agreed to by Mr. Liebowitz. Because the initial proposed

Scheduling Order submitted by Mr. Liebowitz was so skeletal in form, Mr. Liebowitz was

directed specifically to take the "laboring oar" in submitting by March 5, 2020 a revised

Scheduling Order reflecting the dates and discovery limits determined with the

agreement of all parties at the Scheduling Conference.

The task was not difficult. First, Mr. Liebowitz had to take the dates and discovery

limits decided at the Scheduling Conference and transfer them into the new proposed

order, ready for judicial signature. The agreed dates and limits were reflected in the

Courtroom Minutes of the Scheduling Conference issued the same day as the

conference. *See* Dkt. #35. Next, Mr. Liebowitz was instructed during the Scheduling

Conference that his client's "Statement of Claims and Defenses" and "Computation of

Damages" sections were inadequate in terms of the detail provided. For example, under

the "Computation of Damages" section, all that Mr. Liebowitz originally had written was

"Statutory damages and attorneys fees and costs." The Court asked for more detail and

justification for the claimed amount. Once Mr. Liebowitz had made the changes to the

proposed Scheduling Order, he was to send the revised version to newly-appointed pro

bono defense counsel for inclusion of Defendant's statement of claims and defenses,

and then Mr. Liebowitz was submit the revised document to the Court by March 5, 2020.

*See* Dkt. #35 at 2. All this was made plain to Mr. Liebowitz, as reflected in the recording

of the Scheduling Conference. Mr. Liebowitz specifically agreed to meet the deadlines imposed.

But Mr. Leibowitz did not timely submit a revised proposed Scheduling Order as requested. He also did not make his initial disclosures by the agreed March 17, 2020 deadline. Mr. Liebowitz did not ask the Court for an extension of the deadlines.

Mr. Liebowitz purported to comply with my subsequent Minute Order of April 27, 2020 by submitting, on April 30, 2020, another version of the Scheduling Order. *See* Dkt. #46. But he did not send a copy to opposing counsel for comment until 10:45 p.m. that very night, with an e-mail stating words to the effect of "If I do not hear from you in 45 minutes, I will submit this to the Court without your input." Mr. Leibowitz then submitted the document without any inclusions from defense counsel. Mr. Liebowitz obviously put little thought into even his portions of the revised Scheduling Order, failing to follow my original directions from the Scheduling Conference on what the revised Scheduling Order was to contain. He did not make the changes that were discussed and agreed to, did not include any of the limits on proposed discovery as specified by the Court at the Scheduling Conference, and did not provide any more detail to the "Statement of Claims and Defenses" and the "Computation of Damages" sections as had been specifically requested. It was as if the Scheduling Conference had never happened.[1]

---

[1] For example, as reflected in the minutes of the Scheduling Conference, each party was to be limited to no more than three depositions (exclusive of experts). In terms of the length of depositions, each party was entitled to take one deposition of up to seven hours in length and all other depositions were to be limited to four hours. Mr. Liebowitz's new Scheduling Order, submitted on April 30, 2020, under the section "Limitations which any party proposed on the length of depositions" says merely "None" -- the same

However, in his newly proposed Scheduling Order, Mr. Liebowitz did change, unilaterally, the discovery cut-off deadline to October 30, 2020, even though the date specified at the Scheduling Conference (and reflected in the Courtroom Minutes) was August 28, 2020. He also changed the dates of the deadline for Joinder of Parties and Amendment of Pleadings to July 17, 2020 (when it had been set for April 10, 2020 at the Scheduling Conference), and also moved the dispositive motions deadline to November 13, 2020, when it had been set for September 25, 2020 at the Scheduling Conference.[2] He did this without alerting the Court that he was making changes from what had been specified at the Scheduling Conference. So, Mr. Liebowitz not only failed to comply with the specific directions given at the Scheduling Conference, his attempt to comply with the Court's April 27, 2020 Minute Order reflects a marked lack of attention and a further failure to comply with court orders.[3]

_____

as his initial, rejected proposed Scheduling Order. Similarly, there was no change to the section on the limitation to the presumptive numbers of depositions or interrogatories.

[2] It may well be that, in light of the COVID-19 pandemic that has crippled the nation since early March of this year, the deadlines set at the Scheduling Conference are no longer realistic and need to be modified. If that is the case, then Mr. Liebowitz should have conferred with defense counsel and provided an explanation for the proposed changes.

[3] It also goes without saying that sending an e-mail to opposing counsel at 10:45 p.m. demanding a response in 45 minutes is entirely unprofessional and inconsistent with the expectation of behavior of lawyers who practice in this Court. In the cover letter which accompanied the proposed Scheduling Order submitted to the Court, Mr. Liebowitz stated, "Plaintiff submits the following revised discovery Scheduling Order. Defendants have not gotten back to Plaintiff so Plaintiff submits this plan without Defendants [sic] input." It is disingenuous to make the implicit representation to a court that there was a good faith effort to seek out the other side's input, when in fact the document was sent at 10:45 p.m. with a demand for a response within 45 minutes.

The entire discussion at the Scheduling Conference apparently fell on deaf ears. Given Mr. Liebowitz's failure to follow simple instructions, the Court had to revise the Scheduling Order on its own.

As result of Mr. Leibowitz's multiple apparent failures to follow this Court's orders and instructions and well as a documented history of such failures by Mr. Liebowitz in many other cases, on May 5, 2020, I issued an order specifying that Mr. Liebowitz be prepared to show cause at the May 7, 2020 telephonic hearing why he should not be required to associate with an experienced Colorado federal practitioner as a condition of continuing to prosecute this case. *See* Dkt. #49.

## 2. STANDARD FOR DISMISSAL WITH PREJUDICE AS SANCTION

Defendant has moved for dismissal with prejudice as a sanction for Mr. Liebowitz's conduct. In deciding whether to dismiss an action with prejudice, the Tenth Circuit has instructed that a district court must consider the following non-exhaustive list of factors: (1) the degree of actual prejudice to the other party; (2) the amount of interference with the judicial process; (3) the litigant's culpability; (4) whether the court warned the party in advance that dismissal would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction. *Id.*

## 3. THE SANCTION OF DISMISSAL IS NOT MERITED

Weighing these various factors, I do not find that dismissal with prejudice is merited here. To date, the degree of prejudice to the Defendants is relatively minimal.

Plaintiff, an allegedly aggrieved photographer/copyright owner in this federal copyright case, arguably is not to blame for his lawyer's misconduct. I do not find that the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.

However, I do find that Mr. Liebowitz has demonstrated, both in this case and in many other copyright cases in this and other districts, a disregard for basic federal courtroom rules, procedures, and practices.[4] In February of this year, in my Report and Recommendation denying Defendant's initial motion to dismiss (Dkt. #30), I described Mr. Liebowitz's notoriety and gave a partial history of misconduct in other cases. Nevertheless, I declined at that time to recommend dismissal purely based on Mr. Liebowitz's prior misconduct in other courts stating, "[Defendant] does not allege that Mr. Liebowitz has committed discovery misconduct, ignored court orders, or done anything else sanctionable under Rule 11 in this case. If Plaintiff or his counsel had done so, or if they do in the future, the rulings by other courts will very likely be relevant, but they presently are not." Dkt. #30 at 7.

What had not happened as of February 7, 2020, the date when I wrote those words, has now come to pass. Mr. Liebowitz's lack of attention to the rules and procedures of this Court and his complete disregard for was what decided and ordered

---

[4] For example, early in this case, Mr. Liebowitz was admonished by the Clerk that he was using an incorrect signature format in violation of D.C.COLO.LCivR 5.1(a) and 4.3(a). *See* Dkt. #14. He was further instructed by the Clerk that his filing was incorrectly formatted and not consistent with D.C.COLOLCivR 10.1. *See* Dkt. #15. In October of 2019, Mr. Liebowitz was informed by the Clerk that he had been administratively removed from the court's attorney roll and barred from filing electronically for failing to pay the 2018 Biennial Fee. He also failed to comply with provisions of the Electronic Case Filing Procedures. *See* Dkt. #22.

at the Scheduling Conference has interfered with the judicial process. Action must be taken to ensure that is does not recur in this case. Rather than dismissing the case with prejudice, I find that the lesser sanction of requiring Mr. Liebowitz to associate with an experienced Colorado lawyer with at least five years of regular practice in the United States District Court for the District of Colorado is an appropriate condition for the continued prosecution of this case.

### 4. BASIS FOR IMPOSITION OF ALTERNATIVE SANCTION

I do not impose this sanction lightly. But Mr. Liebowitz's reputation for disregard of basic courtroom procedures and rules has preceded him. He has been given the opportunity in this case to disprove that reputation. Instead, he has lived up to it.

Numerous courts in other federal districts have criticized or sanctioned Mr. Liebowitz for his litigation conduct in similar copyright cases, including for failing to follow basic courtroom procedures and rules. *See, e.g., Rock v. Enfants Riches Deprimes, LLC*, No. 17-cv-2618-ALC, 2020 WL 468904 (S.D.N.Y., Jan. 29, 2020) (awarding $100,008 in attorneys fees and costs against plaintiff for advancing objectively unreasonable and frivolous arguments and ordering Mr. Liebowitz and his firm to pay $10,000 of the award as a sanction for bad faith litigation conduct, including failing to investigate evidentiary basis for complaint, stonewalling discovery, misleading the Court, and making meritless arguments); *Romanowicz v. Alister & Paine, Inc.*, 17cv8937-PAE-KHP, ECF No. 24 (S.D.N.Y. June 22, 2018) (ordering Mr. Liebowitz to pay $200 to the Clerk of Court as a consequence of his failure to comply with an order directing him to file an affidavit of service of a default judgment); *Ferdman v. CBS Interactive, Inc.*, 342 F.Supp.3d 515 (S.D.N.Y. 2018) (imposing discovery sanction of

precluding Mr. Liebowitz's plaintiff client from relying on documents that were requested in discovery but never produced—resulting in denial of the plaintiff's motion for summary judgment on issue of infringement).

As a federal judge in one case said, "In his relatively short career litigating in this District, Richard Liebowitz has earned the dubious distinction of being a regular target of sanctions-related motions and orders. Indeed, it is no exaggeration to say that there is a growing body of law in this District devoted to the question of whether and when to impose sanctions on Mr. Liebowitz alone." *Rice v. NBCUniversal Media, LLC,* No. 19-CV-447 (JMF), 2019 WL 3000808, at *1 (S.D.N.Y. July 10, 2019) (imposing $8,745.50 sanction on Mr. Liebowitz and his firm "for his repeated failure to comply with this Court's orders, failures that imposed considerable and unwarranted costs on the Court, its staff, and Defendant"). *See also Pereira v. 3072541 Canada Inc.*, No. 17-CV-6945 (RA), 2018 WL 5999636, at *3 (S.D.N.Y. Nov. 15, 2018) ("The Court finds particularly concerning Mr. Liebowitz's repeated failures to follow the orders and rules of this Court and others within the district, as well as his propensity to take unreasonable positions and to omit crucial facts—or even to make outright misrepresentations—in an apparent attempt to increase costs and to extort unwarranted settlements."); *Steeger v. JMS Cleaning Servs.*, *LLC*, No. 17-CV-8013 (DLC), 2018 WL 1363497, (S.D.N.Y. March 15, 2018) (imposing sanction of $2,000 on Mr. Liebowitz personally and requiring him to attend four CLE credit hours in ethics and professionalism); *Craig v. UMG Recordings, Inc.*, No. 16-CV-5439 (JPO), 2019 WL 1432929, at *10 (S.D.N.Y. Mar. 29, 2019) (imposing personal sanctions on Mr. Liebowitz and his firm for filing meritless disqualification motion in bad faith and requiring court to hold wasteful and unnecessary

evidentiary hearing); *Polaris Images Corp. v. CBS Interactive, Inc.*, 19-cv-3670 (VEC), 2019 WL 5067167 (S.D.N.Y. Oct. 9, 2019) (ordering Mr. Liebowitz to pay sanction of $1,500 after failing to provide adequate or convincing reasons for his failure to comply with two explicit and simple directions contained in a court order, dismissing the excuse of "administrative errors"); *Terry v. Masterpiece Advertising Design*, 19-cv-8240 (NRB), 2018 WL 3104091 at *2 (S.D.N.Y. June 21, 2018) (admonishing Mr. Liebowitz for repeating arguments that "have no basis in law").

Given Mr. Liebowitz's filing of dubious claims and repeated proven misconduct, some judges of the Eastern and Southern Districts of New York have required Mr. Leibowitz's clients to post cost bonds as a condition of proceeding with their cases. *See Lee v. W Architecture and Landscape Architecture, LLC*, 18-cv-05820 (PKC) (CLP), 2019 WL 2272757 (E.D.N.Y. May 28, 2019) (granting defendant's motion for $10,000 cost bond, citing in part Mr. Liebowitz's failure to timely file motion papers and history of failing to follow court orders in other cases); *Reynolds v. Hearst Comm'ns, Inc.*, 17-cv-6720 (DLC), 2018 WL 1229840 (S.D.N.Y. March 5, 2018) (finding that Mr. Liebowitz had failed to comply with court orders, "as he has in other lawsuits" and ordering the plaintiff to post a bond of $10,000); *Leibowitz v. Galore Media, Inc.,* 18-cv-2626 (RA) (HBP), 2018 WL 4519208 (S.D.N.Y. Sept. 20, 2018) (denying motion for reconsideration of order requiring $10,000 cost bond citing "history of con-compliance with court orders in similar actions"); *Cruz v. Am. Broadcasting Cos., Inc.*, 17-cv-8794 (LAK), 2017 WL 5665657 (S.D.N.Y. Nov. 17, 2017) (finding on the face of the complaint "serious questions as to the merits of plaintiff's claim" and ordering Mr. Liebowitz's client

Case 1:19-cv-01437-CMA-NRN Document 51 Filed 05/11/20 USDC Colorado Page 11 of 32

to show cause why an order should not be entered requiring security for costs as a condition of proceeding further).

Just last summer, Judge Kathleen M. Tafoya of this District imposed terminating sanctions against Mr. Liebowitz's client for defiance of two court orders concerning the scheduling of the case as well as Mr. Liebowitz's failure to appear at a scheduling conference. *Stelzer v. Lead Stories, LLC*, No. 19-cv-000473-PAB-KMT, 2019 WL 5095691 (D. Colo., Recommendation of June 11, 2019). In his order overruling Mr. Liebowitz's objection to the dismissal recommendation, Chief Judge Philip A. Brimmer found Mr. Liebowitz "culpable," as his "failure to comply with multiple deadlines and court orders evidences not an administrative error, but a pattern of disrespect for the magistrate judge's authority." *Stelzer*, 2019 WL 5095689 at *4 (D. Colo. July 3, 2019). Judge Brimmer noted that Mr. Liebowitz had been "previously sanctioned in another district for similar behavior, which clearly has had no deterrent effect." *Id.* (citing *Steeger,* 2018 WL 1363497).

On October 7, 2019, an order of disbarment was entered against Mr. Liebowitz by the North District of California after it came to that court's attention that Mr. Liebowitz had been filing numerous cases in the Northern District without being a member of the State of California bar and without seeking *pro hac vice* admission, as was required under the Northern District of California's rules. *See In the Matter of Richard P. Liebowitz*, Case No. 19-mc-80228-JD (N.D. Cal. October 7, 2019). Ten days later, the same judge issued a supplemental order when it became apparent that Mr. Liebowitz had failed to comply with the portion of the disbarment order requiring Mr. Liebowitz to

notify all judges of the Northern District of California before whom Mr. Liebowitz had cases of the disbarment. *Id.* (Order of October 17, 2019).[5]

The Honorable Denise Cote of the Southern District of New York has publicly criticized Mr. Liebowitz for his firm's practice of filing hundreds of cases asserting claims of copyright infringement allegedly "focused on obtaining quick settlements priced just low enough that it is less expensive for the defendant to pay the troll than defend the claim." *McDermott v. Monday Monday, LLC*, No. 17-cv-9230-DLC, 2018 WL 5312903, at *2 (S.D.N.Y. Oct. 26, 2018) (citing numerous cases where lawsuits filed by Mr. Liebowitz have been dismissed, settled, or otherwise disposed of before any merits-based litigation).

More recently and even more seriously, Mr. Liebowitz was held in contempt of court. *See Berger v. Imagina Consulting, Inc.*, Case No. 7:18-cv-08956-CS (S.D.N.Y.) (Minute Entry for proceedings held before Judge Cathy Seibel on November 13, 2019, where the court declined to vacate the findings of contempt, making specific findings that Mr. Liebowitz willfully lied to the court and willfully failed to comply with lawful court orders).[6] Those contempt proceedings provide insight as to why Mr. Liebowitz appears to regularly flout basic courtroom procedures and orders. In a letter to Judge Cathy

---

[5] Mr. Liebowitz stated at this Court's Sow Cause Hearing on May 7, 2020, that he is challenging the order of disbarment in the Northern District of California because it was "legally erroneous." Mr. Liebowitz asserts that he could not be disbarred by the Northern District because he had never been admitted to practice there in the first place, and he had thereafter sought *pro hac vice* admission.

[6] The history of Mr. Liebowitz's contempt citation is found at *Berger v. Imagina Consulting, Inc.,* Case No. 7:18-cv-08956-CS, 2019 WL 6695047 (S.D.N.Y. 2019) (Order of contempt and order to show cause why Mr. Liebowitz should not be incarcerated until such time as he complies with prior court orders, dated November 1, 2019).

Seibel dated November 11, 2019, counsel for Mr. Liebowitz seeking to vacate the

contempt citation described Mr. Liebowitz as a 31-year old "young and inexperienced

lawyer" who was "short on legal experience and training." Despite his inexperience, Mr.

Liebowitz, because of his own photo-journalism background and entrepreneurial spirit,

nevertheless has managed to develop a thriving practice representing photographers

whose images allegedly have been misappropriated. As a result, in the five years of the

Liebowitz's firm's existence, his law practice had grown "exponentially," leading to the

filing of more than 2,000 federal lawsuits under the copyright statute. Recognizing the

fundamental problems with a young, relatively inexperienced, understaffed lawyer

bringing thousands of federal lawsuits in federal courts across the country, Mr.

Liebowitz's counsel informed Judge Seibel that he had recommended, among other

things, that Mr. Liebowitz "enroll in a CLE course addressing small law firm

management" and also recommended that Mr. Liebowitz "seek out a respected mentor

in [the field of copyright infringement and enforcement]." *Berger,* Case No. 7:18-cv-

8956-CS, at Dkt. #61 (Letter of November 11, 2019, from Richard A. Greenberg to

Judge Cathy Seibel).

Judge Seibel's admonition to Mr. Liebowitz at the conclusion of the contempt

proceeding, where the judge refused to vacate the contempt citation, is instructive:

> I can only say, Mr. Liebowitz, that your work may be valued by your
> clients. It may be perfectly appropriate, but it is not a good business model
> to bring a lawsuit and make a demand that you don't have a good faith
> basis for; lie about it to the other side; lie to the Court; try to drop the case
> when you get busted; and end up sitting where you are sitting now, which
> is steps away from leaving the courtroom in handcuffs. Not only is it a bad
> business model, but it's a bad way to be as a person. I cannot imagine
> that it is a very pleasant situation to be constantly scrambling to mop up
> problems that you cause yourself. So if your business model is too much
> to handle responsibly, you [sic] got to change it, but getting way out over

your skis and then trying to drop the case when you get in trouble doesn't always work.

*Id.* (Transcript of Proceedings of November 13, 2019 at p. 27).

Another judge in the Southern District concurred that Mr. Liebowitz's failings are not a result of mere oversights, but part of a systematic pattern of failure on his part to discharge the obligations of a member of the bar:

> [T]his not the first time that Mr. Liebowitz has gotten into difficulty in this Court for what at best often is a slap dash approach to pursuing the enormous volume of cases of this nature that he has filed. A "mere oversight" that happens once or twice is one thing[.] A pattern of discovery and related abuse is quite another, and rings of deliberate indifference to an attorney's obligation to behave in a professional, responsible, and competent manner in each and every case he handles. And if the attorney has filed a deluge of cases, such that his workload is too great to discharge that obligation, the volume of cases must be reduced to a number that may be managed responsibly or the number of responsible and competent attorneys tasked with handling it must be increased.

*Sands v. Bauer Media Group*, 17-cv-9215 (LAK), 2019 WL 4464672, at *6 (S.D.N.Y. 2019) (ordering payment attorneys fees and costs as sanction for discovery misconduct and dismissing as "lame" Mr. Leibowitz's excuse of "a mere oversight of counsel amounting to no more than simple negligence").

Any suggestion that Mr. Liebowitz may have improved his ability to follow court orders and procedures since he was found in contempt of court in November 2019 is belied by a recent order issued on March 24, 2020 out of the Eastern District of North Carolina. *See Masi v. Mythical Entertainment,* No. 5:19-CV-438-FL, 2020 WL 1490704 (E.D.N.C. March 24, 2020) In that case, the court had ordered Mr. Liebowitz to cure a multitude of filing deficiencies noticed by the clerk. The deficiencies included a failure to properly identify exhibits consistent with the local electronic filing procedures; failure to file a financial disclosure statement in accordance with the Federal Rules of Civil

14

Procedure and the pertinent local rule; failure to flatten documents pursuant to the

CM/ECF Manual; failure to pay the civil filing fee; and failure to comply with the Eastern

District of North Carolina Local Rule 83.1(d) (having to do with representation by local

counsel who must sign all pleadings). Mr. Liebowitz neither cured the deficiencies nor

responded to the court's order. His client's complaint then was dismissed pursuant to

Fed. R. Civ. Pro. 41(b) for failure to comply with the court's order.

In April of this year, Judge Lorna Schofield, also of New York's Southern District,

issued a $5,000 sanction order against Mr. Liebowitz and his law firm for discovery

misconduct. *See Wisser v. Vox Media, Inc.*, No. 19-CV-1445-LGS, 2020 WL 1547831

(S.D.N.Y. April 1, 2020). The misconduct cited in *Wisser* is indicative of a lawyer and a

law firm unable to live up to basic requirements of being a federal court practitioner. Mr.

Leibowitz served incomplete interrogatory responses on behalf of his client; he did not

consult with his client before certifying and serving the interrogatory responses (and the

plaintiff had never seen them before his deposition); the responses omitted information

that Mr. Liebowitz and his client possessed at the time they were served; attached to

the interrogatory responses was a verification to which the client's signature was

attached without the client's knowledge; Mr. Liebowitz certified the interrogatory

responses; and Mr. Liebowitz never asked his client to search for documents

responsive to the defendant's request for production until after the deadline for

production had passed. *Id.* at *3. Among the excuses presented by Mr. Liebowitz in

arguing against sanctions in *Wisser* was that it was his law firm's normal practice to

attach client signatures to routine discovery-related documents without checking with

the client first. Mr. Liebowitz also blamed his law firm's "unprecedented volume of cases

15

on the docket which has produced administrative burdens." *Id.* at n.6. He also told the

court that he does not usually serve Rule 33(b)(5) signature verifications unless

specifically requested. *Id.* at *1. The Federal Rules of Civil Procedure require otherwise.

Just last week, on May 7, 2020, Chief Judge Nancy J. Rosenstengel of the

Southern District of Illinois issued a blistering indictment of Mr. Liebowitz's practice of

law, labeling him a "legal lamprey," and an "example of the worst kind of lawyering,"

ordering Mr. Liebowitz to pay a $20,000 sanction for his misconduct:

> It is a simple matter for the Court to conclude that Liebowitz's conduct in
> this case has been irresponsible, unreasonable, and detrimental to the fair
> administration of justice, harming both [the defendant], the Court, and
> even his own client, who has lost his opportunity to advance what appear
> to have been a meritorious claim. Even without ample evidence on the
> record as to Mr. Liebowitz's consistently poor practice of law in other
> jurisdictions, his filings in this case do not indicate any basis upon which
> Liebowitz could have thought that this court was the appropriate venue for
> this action, leading the Court to conclude that he likely filed this action as a
> bad faith, frivolous attempt to harass [the defendant]. Liebowitz's conduct
> in proceeding with the action after being notified that this Court was an
> inappropriate venue, then seeking a default judgment without notifying the
> opposing party, further demonstrates a tendency to vexatiously and
> unreasonably create frivolous work for the Court. While the undersigned is
> generally inclined to give attorneys the benefit of the doubt, based on the
> sheer volume of cases that Liebowitz has filed, the Court feels that he
> should know better by now.

*Ward v. Consequence Holdings, Inc.*, No. 3:18-CV-1734-NJR, 2020 WL 2219070, at *3

(S.D. Ill. May 7, 2020).

One specific aspect of Mr. Liebowitz's misconduct identified in the *Ward* case

now appears to be raising its head in the District of Colorado. It was alleged in the *Ward*

case that Mr. Liebowitz had filed in the Southern District of Illinois, rather than the

correct venue of the Northern District (where the Chicago-based defendant was

located), as part of a pattern where Mr. Liebowitz seeks to avoid the Northern District of

Illinois local rules—which require appointment of local counsel and posting a bond—by

improperly filing cases against Chicago-based defendants in the Southern District of Illinois. *Id.* at *2. The mere filing of a lawsuit, even in the wrong venue or in a location without personal jurisdiction, imposes costs on the court system and creates the potential for entry of a default judgment, which then must later be challenged to the expense of the defendant. That is what happened in the *Ward* case.

This appears to be Mr. Liebowitz's practice in the District of Colorado now too. Membership in the Bar of this Court does not require a Colorado law license or association with local counsel. All that this Court requires is for a person to be licensed by the highest court of a state, federal territory, or the District of Columbia, and be in good standing in all courts and jurisdictions where the applicant has been admitted. Thus, if Mr. Liebowitz were inclined to ignore the requirements of the venue statute and the constitutional limits on the exercise of personal jurisdiction, he could file almost any copyright lawsuit in the District of Colorado on behalf of any plaintiff against any defendant that he chooses. The burden would then fall on the defendant to appear in this Court and defend via a motion to dismiss, on pain of a default judgment. The cost of settling might well be lower than the cost of defending in an inappropriate venue.

A recent review of the records of this Court shows that just last week, on May 5, 2020, Mr. Liebowitz filed in Colorado a new copyright infringement lawsuit, *Takeshige v. Rich Broadcasting LLC*, No. 20-CV-01262-KLM (D. Colo.). Per that complaint, the plaintiff, Mr. Takeshige, is a professional photographer based in Japan. *Id.*, Dkt.#1 ¶ 5. The defendant, Rich Broadcasting, is alleged to be a limited liability company with a place of business in Idaho Falls, Idaho. *Id.* at ¶ 6. The *Tekeshige* complaint asserts, without any specificity, "that venue is proper in this District pursuant to 28 U.S.C.

§1391(b)." As far as personal jurisdiction, the basis is limited to the statement that "[u]pon information and belief, the Court has personal jurisdiction over Defendant because Defendant transacts business in Colorado." *Id.* at ¶ 3. It should go without saying that the mere "transaction of business" in a state by a company headquartered elsewhere, without more, cannot form the basis for either general or specific personal jurisdiction. *See generally Daimler AG v. Bauman*, 571 U.S. 117 (2014).

Without presuming to judge a matter recently filed before one of my colleagues, Mr. Liebowitz's filing of the *Tekeshige* case appears suspiciously similar to the conduct he was accused of in the *Ward* matter. The United States District Court for the District of Idaho has a specific rule governing admission which requires that membership is limited to active members in good standing of the Idaho state bar. *See* Dist. Idaho Loc. Civ. R. 83.4(a). *Pro hac vice* admission to the District of Idaho is permitted but requires the designation as local counsel of an active member of the bar of the District of Idaho and that designated local counsel must appear personally with the *pro hac vice* attorney on all matters heard and tried before the court. Dist. Idaho Loc. Civ. R. 83.4(e). Because of his admission to District of Colorado bar, Mr. Leibowitz could theoretically achieve the objective of imposing undue economic settlement pressure on a defendant, without bothering to sue in the correct venue, a practice for which he has previously been strongly criticized after basely filing against another Idaho-based entity in the Southern District of New York:

> Here, the plaintiff [Mr. Liebowitz's client] voluntarily dismissed his claims after the defendant served a Rule 68 offer and filed a motion to dismiss for lack of personal jurisdiction. In opposition to this motion for fees, the plaintiff does not suggest that he had any non-frivolous reason to believe that there was personal jurisdiction over the defendant in this district. Based on the record before the Court, it appears that the filing in this

district was "frivolous, unreasonable, or groundless." [citation omitted].
Plaintiff's counsel, Richard Liebowitz, is a known copyright "troll," filing
over 500 cases in this district alone in the past twenty-four months. Thus,
whether or not an attorney's fee award could be properly awarded against
the plaintiff under Section 505, such an award against plaintiff's counsel
may be appropriate in an exercise of this Court's inherent power.

*McDermott v. Monday Monday, LLC*, No. 17-CV-9230 (DLC), 2018 WL 1033240

(S.D.N.Y. Feb. 22, 2018).

While many of Mr. Liebowitz's failings seem to originate with his massive

caseload and corresponding inability to follow the rules and schedules of the numerous

different courts where he has cases pending, those failings also extend to what appears

to be a problem with truth-telling. In addition to the contempt proceedings where he was

specifically have found to have lied to the court, Judge Jesse Furman of the Southern

District of New York recently had to preside over the unseemly spectacle of an

evidentiary hearing, taking testimony from a both a mediator and Mr. Liebowitz, to

determine whether Mr. Liebowitz had lied about getting advance approval to not attend

a mediation in person and to have his client attend by telephone. The mediator, in a

sworn affidavit, disputed Mr. Liebowitz's account. An evidentiary hearing occurred

January 8, 2020 to determine the truth or falsity of Mr. Liebowitz's assertions. *See*

*Usherson v. Banshell Artist Mgmt.*, 19 CV 6368 (JMF), at Dkt. #66 (S.D.N.Y.)

(Transcript of Hearing of January 8, 2020).[7]

---

[7] As of the date of this Order, no decision has issued from Judge Furman as to his
findings from that hearing. Despite the lack of a decision from Judge Furman, a review
of the transcript paints a sad picture of Mr. Liebowitz's adherence to court orders. Mr.
Liebowitz had specifically been instructed by the court that the mediation in question
was to be an "in person mediation." But Mr. Liebowitz's client did not show, and Mr.
Liebowitz sent other lawyers from his firm in his own place. When the matter did not
settle, opposing counsel sought sanctions for having attended in person. Mr. Liebowitz
claimed that he had gotten advance permission from the mediator not to attend in

Case 1:19-cv-01437-CMA-NRN    Document 51    Filed 05/11/20    USDC Colorado    Page 20 of 32

During that evidentiary hearing in *Usherson*, Mr. Liebowitz, under examination

from his own colleague, again attempted to blame his numerous failings on the crush of

cases he has filed coupled with his lack of qualified assistance:

Q. And when did you first file your first case?

[Mr. Liebowitz] I believe 2016.

Q. Was it in January 2016?

A. I believe so.

Q. And you were admitted to the bar in September 2015?

A. Yes.

Q. And since that time, January 2016, approximately how many
cases has the Liebowitz Law Firm filed?

A.  Filed approximately 2,000.

Q. 2,000 –

A. 2,000 cases countrywide.

Q. And at the time of the mediation, approximately how many
cases did you have pending on your docket?

A.  At the time of this mediation, it was definitely over 100.

Q. Would it surprise you to know that at the time of the
mediation, you had -- the Liebowitz Law Firm had over 400 cases
pending in federal court?

A. Yeah, that could be. That could be.

Q. And how many lawyers do you have employed, besides you, at
Liebowitz Law Firm?

A.  So I only have Mr. Freeman and now my sister,
Ms. Liebowitz, that just recently got admitted. But that's it.

---

person, a fact the mediator disputed. There was no written or electronic evidence of
such permission.

Q. So essentially -- would it be accurate to state that you
essentially have two lawyers handling over 400 cases at one
time?

A.  Yes.

Q. And is it your belief that that might explain why there
have been administrative failures on your part, as well as the
firm's part?

THE COURT: Sustained as to form.

Q. Since November of 2019, have you retained outside counsel
to help instruct you in terms of any matter?

A. Yes. I have retained a counsellor to help out on business
management and to help out with, you know, situations that may
arise and that could help with the practice. Because it is --
there's a lot of cases, and it's -- we try our best, you know,
to -- try to help, you know, the photography community.
And it's -- it's -- we are doing all we can now to fix
the mistakes that we've done in the past and make sure that
things don't happen again. And I -- you know, I'm getting
advice from an outside lawyer on how to make things better and
how to clean up everything. And I know that, you know, certain
things are not best practice, and I understand that. And I
understand that things need to change. And I am speaking with
a reputable lawyer to help out in these situations so that
things like this don't happen again; and that all the T's are
crossed and I's are dotted. And I want to make sure that
everything is perfect with the courts and that things like this
don't happen again.

THE COURT: And just out of curiosity, when you say
"things like this," what are you referring to?

THE WITNESS: I'm just talking about, you know, best
practices, like, you know, getting things in writing, you know,
making sure that everything is calendared, making sure --
getting a system of -- a calendaring system, you know, trying
to get like a customized one, with the amount of volume that we
have, to just make sure everything is on the calendar when
things are due, when motions are due, when there's conferences,
when there's mediations.
And I'm in the process of putting all that together so

that, going forward, that nothing is missed and everything is
calendared, and making sure that things run smoothly going
forward.

*Id.* (Transcript of Hearing Proceedings of January 8, 2020 at pp. 80–82). Mr. Liebowitz's

testimony in the *Usherson* matter was presented as exculpatory. In this Court's view, it

was instead a damning self-indictment by a lawyer who has perfected a recipe for the

regular commission of legal malpractice.

### 5. Mr. LIEBOWITZ'S TESTIMONY BEFORE THIS COURT IN RESPONSE TO ORDER TO SHOW CAUSE

On May 7, 2020, I held a hearing on Defendant's Motion to Dismiss for Failure to

Prosecute and also heard Mr. Liebowitz's response to my Order to Show Cause why he

should not be required to associate with an experienced federal practitioner as a

condition of continuing to prosecute the case.

Because at least one court has found Mr. Liebowitz to be less than truthful in

making statements to the court, I asked my courtroom deputy to swear in Mr. Liebowitz

prior to answering my questions, so that any answers would be made subject to penalty

of perjury.

Mr. Liebowitz's explanation for why he had failed to timely submit the revised

Scheduling Order and the Rule 26 Disclosures was that he had forgotten. "It was a

mistake. I simply forgot," he said. Mr. Liebowitz acknowledged he had not looked at the

Minute Order issued by the Court that included all the dates that had been agreed to

during the Scheduling Conference. "Mistakes happen," Mr. Liebowitz repeatedly said in

his defense. "It fell through the cracks."

On specific inquiry by the Court, Mr. Liebowitz confirmed many of the facts

recited from the litany of sanction orders issued in other cases. Although he now has 15

people working for him in his firm, he only has two other lawyers, and one paralegal.

The paralegal purportedly keeps track of his cases. In terms of keeping track of *dates*

on his cases, Mr. Liebowitz testified he does that himself. Asked how many cases he

has pending in courts across the country at this time, Mr. Liebowitz could not provide

the exact number, but it was "safe to say it is more than one hundred." He has

"definitely more than 50" pending in the Southern District of New York alone.[8]

     Asked what procedures he has in place to ensure that problems of scheduling,

ignoring court-deadlines, and double-booking do not occur, Mr. Liebowitz said his firm is

"in the process now of getting software that could help out with this, so that things like

this do not happen again." Apparently, the software is not yet in place, and Mr.

Liebowitz says it "takes time" to install these procedures. Mr. Liebowitz again said that

"things fall through the cracks; no one is perfect."

     Mr. Liebowitz denied that there are any on-going disciplinary proceedings against

him in any court, other than in the Northern District of California where he is challenging

the order of disbarment issued there. Mr. Liebowitz explained that he could not be

disbarred by that court, since he had never been a member of that bar in the first place.

Asked again specifically whether there are any pending disciplinary proceedings against

him, for example, whether Judge Seibel had referred the contempt finding against him

to a disciplinary body, Mr. Liebowitz disclaimed knowledge of any such proceedings.

     As to the recommendation that his own counsel had made in November 2019 (in

connection with the contempt proceedings before Judge Seibel) that Mr. Liebowitz

---

[8] Research via Bloomberg Law's Dockets Search indicates that Mr. Liebowitz is counsel of record in more than 500 lawsuits currently pending in federal courts around the country.

should take a continuing education course in small law firm management, Mr. Liebowitz conceded that notwithstanding his lawyer's recommendation, he had not taken such an education course. As to the recommendation that Mr. Liebowitz get mentorship from a lawyer experienced in copyright law, Mr. Liebowitz testified that he had sought out such a mentor. He identified the mentor by name. But Mr. Liebowitz said the mentor had not come by Mr. Liebowitz's office nor made any recommendations on how Mr. Liebowitz should run his office. Mr. Liebowitz conceded it was not a "regular" mentorship process. Mr. Liebowitz could not remember the last time he had spoken to his mentor. Mr. Liebowitz says that since the time of the contempt proceedings in November 2019, he met with his mentor "maybe once or twice" for "maybe an hour." This Court, of its own accord, placed a confirming phone call to the attorney/mentor named by Mr. Leibowitz. The mentor did verify (without discussing the substance of his communications with Mr. Leibowitz) that he had met with Mr. Leibowitz around the time of Southern District contempt proceedings for an hour or more.

Any good faith effort to correct the problems identified by Judge Seibel and the other judges by whom he has been sanctioned would have involved more than a single meeting around the time of last year's contempt proceedings.

Mr. Liebowitz's final plea in opposition to the imposition of sanctions was, again, that this was an honest mistake and that he is "just one person," implying that the magnitude of his caseload is in part responsible for the errors. Mr. Liebowitz also argued that this should "not just be about" him, making reference to the photographers who he represents and who are having their images misappropriated. Said Mr. Liebowitz, "I'm not a five-hundred-person law firm. My goal is help working class

photographers and it's a big problem with copyright infringement and I'm trying to help them."

The reality Mr. Liebowitz refuses to face is that "just one person" should not be filing hundreds of lawsuits in different courts around the country. "Just one person," and especially a "young and inexperienced" person who has been told by his own counsel to take a law firm management class, to get qualified mentorship, and still does not have in place a software system to keep track of his numerous commitments to courts around the country, cannot competently prosecute the number of cases Mr. Liebowitz is filing.

Given the rate at which Mr. Liebowitz continues to file lawsuits, the problems are going to get worse. Using Bloomberg Law's Docket Search, research staff of this Court determined that just last week (the week of May 4–8, 2020), Mr. Liebowitz filed nineteen new copyright cases in federal courts around the United States.[9] At the rate of 19 cases a week, he is on track to file more than 900 new cases this year alone.

---

[9] Nine cases were filed in the Eastern District of New York, three in the Southern District. Two each were filed in the Southern and Western Districts of Texas. One was filed in Colorado, one in the Middle District of Tennessee, and one in the District of Arizona. I list the identified cases below.

1.    *Adlife Marketing & Communications Company, Inc. v. Food King Corporation*, Docket No. 4:20-cv-01623 (S.D. Tex. complaint filed May 08, 2020).
2.    *Craine v. Convicts, LLC*, Docket No. 1:20-cv-02104 (E.D.N.Y. complaint filed May 07, 2020).
3.    *Wexler v. Vos Iz Neias LLC*, Docket No. 1:20-cv-02103 (E.D.N.Y. complaint filed May 07, 2020).
4.    *Wexler v. Outer Boro Media LLC*, Docket No. 1:20-cv-02080 (E.D.N.Y. complaint filed May 07, 2020).
5.    *Seidman v. Vox Media, Inc.*, Docket No. 1:20-cv-03552 (S.D.N.Y. complaint filed May 06, 2020).
6.    *Criss v. ReelzChannel, LLC*, Docket No. 1:20-cv-03551 (S.D.N.Y. complaint filed May 06, 2020).
7.    *Simhaq v. Kid Carter Touring, Inc.*, Docket No. 1:20-cv-02057 (E.D.N.Y. complaint filed May 06, 2020).

By the evidence presented, including via Mr. Liebowitz's own testimony and the
numerous sanctions orders entered against him, Mr. Liebowitz regularly is committing
legal malpractice and violations of the Rules of Professional Conduct. *See* Colo. RPC
1.1 ("A lawyer shall provide competent representation to a client. Competent
representation requires the legal knowledge, skill, thoroughness and preparation
reasonably necessary for the representation."); D.C.COLO.LAttyR 2(a) (adopting, with
minor exceptions, the Colorado Rules of Professional Conduct as standards of
professional conduct for the United States District Court for the District of Colorado). Mr.
Liebowitz either does not know the rules (including the local rules) that apply to the
cases he is filing across the country, or he does not take the time to ensure that he has

---

8.      *Trinkhaus v. The King & I Sales and Distribution Company, Inc.*, Docket No.
1:20-cv-02056 (E.D.N.Y. complaint filed May 06, 2020).

9.      *Zlozower v. Barstool Sports, Inc.*, Docket No. 1:20-cv-03516 (S.D.N.Y. complaint
filed May 06, 2020).

10.     *Harbus v. L'Italo-Americano, LLC*, Docket No. 1:20-cv-02055 (E.D.N.Y. complaint
filed May 06, 2020).

11.     *Usherson v. Third Man Records, LLC*, Docket No. 3:20-cv-00390 (M.D. Tenn.
complaint filed May 05, 2020).

12.     *Wisser v. The Prism Music Group, Inc.*, Docket No. 2:20-cv-02054 (E.D.N.Y.
complaint filed May 05, 2020).

13.     *Takeshige v. Rich Broadcasting LLC*, Docket No. 1:20-cv-01262 (D. Colo.
complaint filed May 05, 2020) [Assigned to Magistrate Judge Kristen L. Mix].

14.     *Williams v. IHeartMedia, Inc.*, Docket No. 5:20-cv-00557 (W.D. Tex. complaint
filed May 05, 2020).

15.     *Verch v. Six Foods LLC*, Docket No. 1:20-cv-02053 (E.D.N.Y. complaint filed
May 05, 2020).

16.     *Mustard v. InfoWars, LLC*, Docket No. 1:20-cv-00485 (W.D. Tex. complaint filed
May 05, 2020).

17.     *Dirscherl v. Maverick Multimedia, Inc.*, Docket No. 1:20-cv-02025 (E.D.N.Y.
complaint filed May 05, 2020).

18.     *Burns v. Easy Living Real Estate LLC*, Docket No. 2:20-cv-00865 (D. Ariz.
complaint file May 04, 2020).

19.     *Chin v. Starlite Broadcasting, LLC*, Docket No. 2:20-cv-00103 (S.D. Tex.
complaint filed May 04, 2020).

systems in place to ensure the rules and various court orders are being adhered to. This is to the extreme detriment of the clients he purports to be helping and to the detriment of the court systems in which he is practicing.

In fact, during the May 7, 2020 Show Cause Hearing, it was revealed that Mr. Liebowitz had committed another violation of this Court's Local Rules by unilaterally sending out a deposition notice for Defendant King and specifying a date for his appearance, without first conferring with opposing counsel. *See* D.C.COLO.LCivR 30.1 ("Before sending a notice to take a deposition, counsel or the unrepresented party seeking the deposition shall make a good faith effort to schedule it in a convenient and cost-effective manner."). Defending himself on this point, Mr. Liebowitz asserted the deposition notice was "just a place-holder." But under this Court's Local Rules, there is no such thing as a "placeholder." Sending a deposition notice without prior conferral has real consequences for the receiving party. The onus then falls of the receiving lawyer to either file a motion for a protective order or initiate a phone call to address what should have been done by the noticing lawyer in the first place.

### 6. SANCTION TO BE IMPOSED

Based on his performance to date in this case, and in the other cases cited, Mr. Liebowitz has not gotten his law practice under control to the point where he can be expected to fulfil his obligations to follow the rules of the District of Colorado or to obey court orders. Therefore, I will require that, as a condition of this case moving forward, Mr. Liebowitz must associate with a Colorado-based counsel with at least five years of regular experience practicing in the United States District Court for the District of Colorado. Said lawyer must enter an appearance in this case within the next twenty-one

days and said lawyer's signature must appear on any filings and discovery responses

submitted by Plaintiff.

I impose this sanction based on my inherent authority to manage the docket in

this case and this litigation. Federal district courts have the inherent power to manage

their dockets "to achieve the orderly and expeditious disposition of cases," so long as

the action is a reasonable response to a specific problem and does not contradict any

express rule or statute. *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891–92 (2016). Moreover,

"[c]ourts have the inherent power to impose a variety of sanctions on both litigants and

attorneys in order to regulate their docket, promote judicial efficiency, and deter

frivolous filings." *Clark v. C.I.R.*, 744 F.2d 1447, 1447 (10th Cir. 1984). *See also*

*Chambers v. NASCO*, Inc., 501 U.S. 32 (1991) ("[T]he inherent power extends to a full

range of litigation abuses."). District courts also may sanction attorneys and parties who

disregard schedules and time limits. *MacAlmon Music, LLC v. Maurice Sklar Ministries,*

*Inc.*, 2015 WL 794328, at *9 (D. Colo. Feb. 4, 2015).

Judge William J. Martinez of this Court has previously imposed a similar sanction

in a case involving out-of-state counsel who demonstrated an inability to fulfill the basic

obligations of a lawyer admitted to the District of Colorado. *See Estate of James Strong,*

*Jr. v. City of Northglenn*, Case. No. 17-cv-1276-WJM-MEH, 2018 WL 3126099 (D. Colo.

2018) (Order Denying Plaintiff's Motion for Leave to File Second Amended Complaint,

issued June 26, 2018). In that case, Judge Martinez *sua sponte* raised concerns about

the plaintiff's counsel's ability to competently litigate significant claims on behalf of his

clients. Said Judge Martinez in that case, "At least in part, these representational

deficiencies appear to arise out of the fact that, as out-of-state counsel with apparently

little to no experience with the rules, practice standards, and culture of this District

Court, Plaintiff's interests are being adversely affected by the lack of experienced local

counsel versed in the intricacies attendant to the competent, vigorous representation of

clients in the District of Colorado." *Id.* at \*8. Judge Martinez found that the plaintiff's

counsel's lack of compliance with scheduling deadlines and lack of diligence in

representing the plaintiff had "impacted the orderly and expeditious disposition of this

litigation" and therefore required the plaintiff's lawyer to "immediately associate himself

with co-counsel local to Colorado with significant experience in federal § 1983 litigation

to assist in the future prosecution of this case." *Id.* at \*10.

 I find that Mr. Liebowitz's inability to follow specific orders to which he had agreed

at the Scheduling Conference has impacted the orderly and expeditious disposition of

this litigation. As shown by his behavior in this case and numerous sanction and

contempt orders entered against him in other jurisdictions, this is part of a pattern with

Mr. Liebowitz and his firm. He and his firm are demonstrably incapable of complying

with the rules of the many courts where Mr. Liebowitz is filing hundreds of lawsuits.

Requiring Mr. Liebowitz to associate with an experienced Colorado federal practitioner

should ensure that these problems do not recur in this case, allowing the case to

proceed to a determination on the merits.

 The requirement of association with an experienced lawyer is not dissimilar to the

imposition of a "practice monitor" as a form of attorney discipline. This is disciplinary tool

sometimes used by Colorado's attorney disciplinary authorities when confronted with a

lawyer found to be violating the Rules of Professional Conduct because of firm

mismanagement. *See People v. Field*, 967 P.2d 1035 (Colo. 1998) (entering public

censure against solo practitioner who was handling 1,500 to 2,000 open collection cases and requiring review by practice monitor of attorney's legal files and method of handling caseload for a period of one year). Of course, as noted in the many sanction orders cited above, Mr. Liebowitz's issues extend beyond mere mismanagement, including violating the duty of candor to the court, and intentionally flouting legal principles and court rules.

Holding oneself out as an "officer of the court" is a high honor and a privilege. An officer of the court has great power and also the responsibility to wield that power consistent with the law and the rules:

> As an officer of the court, a member of the bar enjoys singular powers that others do not possess; by virtue of admission, members of the bar share a kind of monopoly granted only to lawyers. Admission creates a license not only to advise and counsel clients but to appear in court and try cases; as an officer of the court, a lawyer can cause persons to drop their private affairs and be called as witnesses in court, and for depositions and other pretrial processes that, while subject to the ultimate control of the court, may be conducted outside courtrooms. The license granted by the court requires members of the bar to conduct themselves in a manner compatible with the role of courts in the administration of justice.

*In re Snyder*, 472 U.S. 634, 646 (1985). I have zero confidence that, absent association with experienced Colorado co-counsel in this case, Mr. Liebowitz will follow this Court's rules, procedures, and orders, and be able to conduct himself "in a manner compatible with the role of courts in the administration of justice." And, a noted at the beginning of this Order, I believe that without dramatic changes to how Mr. Liebowitz practices law, he represents a clear and present danger both to the administration of justice generally, and to the interests of his own clients.

Defense counsel has asked for an additional sanction of $1,000 as a deterrent to future misconduct. I decline to award an additional monetary sanction. Based on history,

monetary sanctions do not seem to have any deterrent effect on Mr. Liebowitz. I
presume that Mr. Liebowitz will have to compensate any attorney who agrees to
associate with him in the prosecution of this case, and that will serve as a proxy for a
monetary sanction.

## 7. CONCLUSION

Wherefore, for the reasons stated above, it is **HEREBY ORDERED** that
Defendant's Motion to Dismiss for Failure to Prosecute (Dkt. #42) **GRANTED IN PART
AND DENIED IN PART**. It is **DENIED** to the extent that it seeks dismissal as a sanction;
it is **GRANTED** to the extent that it seeks an alternative sanction against Mr. Liebowitz.
It is

**FURTHER ORDERED** that, as an alternative sanction to dismissal, within 21
days from the date of this Order, Plaintiff's counsel shall associate with a Colorado-
based attorney with at least five years of experience practicing in this Court. Said co-
counsel shall enter an appearance in this case and, going forward, shall sign any
document submitted or served by Plaintiff in this case. Failure of an experienced
Colorado-based practitioner to enter an appearance in this case consistent with this
Order will result in a recommendation that this case be dismissed. It is

**FURTHER ORDERED** that within fourteen days from the date of this Order, Mr.
Liebowitz is to file a copy of this Order in all other cases he currently has pending in the
District of Colorado, and in any future cases filed in this District for the next six months.
The filing should include a cover sheet titled, "NOTICE OF ATTORNEY SANCTION."
Mr. Liebowitz has filed dozens of cases in the District of Colorado over the past few
years, and a recent search indicates he may have as many as fifteen cases currently

pending here. The district judges and magistrate judges of this Court are entitled to be made aware of Mr. Liebowitz's extensive history of being sanctioned both by this Court and other courts, so that future missteps cannot be attributed to mere "missteps," "administrative oversights" or "mistakes that anyone could make."

The requirement that Mr. Liebowitz file this Order in other pending cases and future cases in this District shall apply even if the instant case is settled or otherwise dismissed. In making this order, I am exercising the Court's inherent authority to police itself, both by alerting my colleagues to, and protecting this Court from, Mr. Liebowitz's demonstrated pattern of misconduct. *See Chambers*, 501 U.S. at 46 (describing the court's inherent power to police itself).

Date: May 11, 2020

N. Reid Neureiter
United States Magistrate Judge